White, J.
This case was partially disposed of at the last term, and, so far as then determined, is reported in 17 Ohio St. 650.
§1] *The deed from Robert Jones to McCalla Thompson having been held valid, it is insisted that the latter, by the deed, took the title to the property in trust for his wife.
We are not satisfied that this claim is well founded.
No such trust is expressed on the face of the deed; and the law will, only imply a trust in the case of necessity. Cook v. Fountain, 3 Swanst. 592.
In the absence of fraud or mistake, or the violation of some principle of equity, the existence of the trust depends upon the intention of the parties. “ In every case of the creation of a trust, it is the intention that governs; and if, upon a consideration of all the circumstances, the court is of opinion that the settler did not mean to- create a trust, the court will not raise up a trust where-none in fact is contemplated.” Lewin on Trusts, (s. p.) 100.
In this case no fraud is pretended, and the question of mistake-will-be hereafter noticed.
The intention to create a trust is to be ascertained according to the ordinary.rules of construction, by looking at the whole instrument in the light of the surrounding circumstances at the time it. was made. . .
The trust, if it exist, must have afisen on the delivery of the-deed; and- if it did not arise then, subsequent events, though *82 wholly unforeseen and unexpected, would not create it. If the-alleged trust could not have been enforced against the grantee in his lifetime, nor against his son, had he survived, neither can it be enforced against the defendants.
In the present case, as has already been held, the consideration in favor of the grantee is sufficient to uphold the deed. It purports-to convey an estate in fee, and its declared purpose is to advance-the grantee in life. The fact that natural love and affection for the-daughter, is stated by the grantor as a consideration, is the only ground found in the deed on which a trust is supposed to arise.. Natural love and affection for the daughter is the foundation of the consideration in favor of her husband, and, in virtue of the-marriage, extends to him; and a conveyance to advance the husband in life necessarily, though indirectly, inures to the benefit of the wife.
*We, therefore, discover no sufficient ground from which [82' to presume an intention to separate the beneficial interest from the legal estate; and, consequently, the equitable follows the legal, title.
The next question in order is, whether Robert Jones, the grantor in the deed to McCalla Thompson, was a competent witness against the defendants below. We think he was.
The general rule as to the competency of witnesses is found in-section 310 of the code, which provides: “ No person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the' same, as a party or otherwise.”
Exceptions to the general rule are found in section 313, which, as-amended March 31, 1865 (61 Ohio L. 128), provides that among other cases, no party, to a civil action shall be allowed to testify by virtue of section 310, in any action where the adverse party claims or defends as heir, except in certain specified eases, which it is not here necessary to notice.
Now, it is true that the parties defendant defend as heirs of Robert W. Thompson, deceased, the infant son of McCalla Thompson and the plaintiff; but the witness is no party to the suit, nor' does he claim any interest adverse to the defendants. He parted with all his interest by the deed of conveyance to McCalla Thompson. Both parties claim under that deed. The contention is wholly between the plaintiff and the defendants. The plaintiff, claiming to be the equitable owner of the land, asks a reformation- *83 of the deed, and to be invested with the legal title. The defendants resist her claim, and rely on their title as heirs.
The deed subsequently made by the witness to the plaintiff does not affect the question, and may be laid out of view. His deed to MeCalla Thompson being valid, by its delivery, he was divested of his interest in the land. At the time, therefore, of making the second deed, he had no estate upon which it could operate, and the case stands as if it had not been made.
The remaining question is, whether the plaintiff in entitled, in equity, to the relief she seeks, on the ground of mistake in the execution of the deed.
88] *The question arising on this branch of the case, is rather one as to the sufficiency of the proof to show a mistake in the use of the terms in the deed, than as to any uncertainty in regard to the rules that should govern in reforming the instrument upon a proper state of proof.
In Evants v. The Adm’r of Strode et el. (11 Ohio, 480), it was laid down that where an instrument, by mistake of the parties, as to the legal effect of the terms used, fails to carry out their intention, relief may be afforded in equity.
And in Clayton and Wife v. Freet et al. (10 Ohio St. 544) it was held that a mistake in the use of technical language in a deed of conveyance, may be relieved against, upon proper proof. And, that where the parties are shown, through ignorance and mistake, to have conveyed an estate to the grantee and her heirs, when the intention was to convey the land to the grantee for life, remainder to her children, the mistake might be corrected.
But it requires a clear and convincing state of fact to warrant the court to interfere with and reform the instrument.
At law a deed is conclusively presumed to express the intention of the parties. But in equity, the matter of a mistake in its execution may be inquired into, and, if the mistake be clearly proved, the ■deed may be reformed, and made to conform to the understanding of the parties, and thus, to effectuate their intention.
A careful consideration of the evidence fails to satisfy us of a mistake that would warrant us in interfering with the deed in question.
The only witness who /testifies to the transaction of the execution of the deed is the grantor. The transaction to which he testifies, occurred more than,fourteen years before; and the truth in regard *84 to the transaction is more likely to be correctly ascertained from its general character than from the recollection of the witness as to the particular language now supposed to have been used at the time.
The making of the deed was deferred until after there was issue of the marriage, a son, who, at the date of the deed, was eight months old. The deed was drawn by the grantee, who was a lawyer, and in whom the grantor'had, and for *aught that ap- [8íü pears deservedly, great confidence. He characterizes him as a noble young man, for whom he would have done anything in his power. He states that the deed was read to him, and he understood it to be a deed to McOalla Thompson, to advance him in life, and as a deed to him and his heirs. He further states that he does not believe, or suppose, that the grantee took the conveyance with any other understanding than that taking it to himself and his heirs, in the form expressed, he was carrying out the intention of the witness.
It is more reasonable to infer that the conveyance was intended to be of a fee simple than of a less estate. There is nothing to show an intention in the grantor to restrict or limit the power of the grantee to dispose of the property absolutely.
Whatever interest his daughter, or grandchild, was supposed to have, they were expected to take as heirs of the grantee, and not directly as parties to whom the deed was made.
The mistake is claimed to have occurred in the use of the term heirs. It is evident the grantor had a very indefinite idea of the meaning of the term. He says he took it for granted “ his heirs” meant the grantor’s “family.” He further states that he thought “it meant children;” that he understood, of course, that after the grantee’s death his son took the property, but he thought the mother would also come in — that heirs meant wife as well as children.
To undertake to give definiteness and precision to the views which the grantor supposes himself to have entertained as to the meaning of the term, would be a work of mere conjecture.
But, if he intended, as we think he did, to invest the grantee with an estate in fee simple, there was no mistake in the use of the terms nor in the operation of the deed.
In this view, the supposed mistake consists of a misunderstanding of the law of descents, as applied to events which were contingent at the time of making the deed, but which subsequently *85 •happened, and, thereby, a class of persons not contemplated let in to the succession.
If the death of the grantee, and that of his son without issue, 85] *and the consequent succession of the defendants as heirs, had been foreseen, the result would, doubtless, have been provided •against, either by limiting the estate conveyed, or by making the •conveyance to the daughter. But this remote and unforeseen con•sequence does not show a mistake as to the estate conveyed directly to the grantee, nor that the operation of the deed, as between the ■parties, is different from what was intended.

Judgment reversed, and cause remanded.

Day, C. J., and Brinkerhoff, Scott, and Welch, JJ., concurred.